IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN ELLING,

     Plaintiff,

v.                                        1:19-cv-00547-LF-SCY

MESA BIOTECH, INC.,
MESA TECH INTERNATIONAL, INC.,
HONG CAI, and ROBERT BRUCE CARY,
a/k/a R. BRUCE CARY, a/k/a ROBERT CARY,

     Defendants.

## MEMORANDUM OPINION AND ORDER DENYING
## MOTION PLAINTIFF'S MOTION TO REMAND

THIS MATTER comes before the Court on plaintiff John Elling's Motion to Remand
(Doc. 8), filed July 12, 2019. Defendants Mesa Biotech, Inc., Hong Cai, and Robert Bruce Cary
filed their response opposing the motion on July 31, 2019, and Mr. Elling filed his reply on
August 14, 2019. *See* Docs. 15, 20. The parties consented to my conducting dispositive
proceedings in this matter. *See* Docs. 6, 7, 9. For the following reasons, I DENY Mr. Elling's
motion.

### I.     Statement of the Case and Procedural Background

This case arises out of a dispute between plaintiff John Elling, formerly Director,
President, and Chief Executive Officer of defendant Mesa Tech International, Inc. (MTI), and his
former colleagues, defendants Hong Cai and Robert Bruce Cary, who now are employed at
defendant Mesa Biotech, Inc. *See* Doc. 1-1 ¶¶ 6−10, 20−34. According to the complaint, Mr.
Elling founded MTI with Ms. Cai and Mr. Cary, and all three were initial shareholders. *Id.*
¶¶ 2−4. MTI was a New Mexico Corporation with its principal place of business in Los Alamos
County, New Mexico. *See id.* ¶ 5. In October 2010, Mr. Elling agreed to resign from his

positions at MTI, but he retained nearly 9% of MTI's stock pursuant to a written agreement. *Id.* ¶¶ 20, 21; *see also* Doc. 1-1 at 10−12 (agreement between MTI and Mr. Elling).

Mr. Elling alleges that over the years, he received scant information regarding MTI's operations. *Id.* ¶ 22. In August 2018, Mr. Elling learned that MTI had merged with Mesa Biotech, Inc., a Delaware Corporation whose principal place of business is in San Diego, California. *Id.* ¶¶ 11, 23, 24. According to the complaint, Mr. Elling received no notice of any proposed merger or proposed amendment to MTI's articles of incorporation, nor did he receive the opportunity to vote on the proposed merger, nor was a merger plan submitted to MTI's shareholders. *Id.* ¶¶ 25−27. Mr. Elling also alleges that MTI/Mesa Biotech has refused to allow him to inspect its books and records and has refused to address his concerns regarding the merger, amendments to the company's articles of incorporation and bylaws, the company's relocation to California, and changes to its stock plan. *Id.* ¶ 29−34. In count I of his complaint, Mr. Elling claims that Ms. Cai and Mr. Cary breached their fiduciary duties to him. *Id.* ¶¶ 35−38. Count II alleges that defendants collectively engaged in "shareholder oppression." *Id.* ¶¶ 39−41. Count III alleges that MTI breached its contract with Mr. Elling, including breaching the covenant of good faith and fair dealing. *Id.* ¶¶ 42−46. Mr. Elling seeks compensatory, punitive, and statutory damages, as well as his attorneys' fees and costs. *Id.* at 8.

Mr. Elling filed his complaint in the First Judicial District Court in Santa Fe, New Mexico, on May 7, 2019. Doc. 1-1 at 1 (file stamp showing location and date of filing). In his complaint, Mr. Elling alleged "[o]n information and belief, Cai and Cary are residents of Los Alamos County and Santa Fe County, respectively." *Id.* ¶ 12. A process server served defendants Mesa Biotech, Hong Cai, and Robert Bruce Cary in San Diego, California on May

14, 2019.[1]  Doc. 1-1 at 13−15.  On June 13, 2019, these three defendants filed a notice of removal, and removed the case to this Court based on diversity jurisdiction.  *See* Doc. 1.

In the notice of removal, the defendants assert that MTI formerly was a New Mexico Corporation but formally merged with Mesa Biotech on July 14, 2015, and therefore ceased to exist on that date.  *Id.* ¶ 11; *see also* Doc. 1-2; Doc. 1-4 at 5.  Because MTI no longer existed as a New Mexico corporation when Mr. Elling's lawsuit was filed, and because it had been subsumed by Mesa Biotech, the remaining defendants assert that MTI is no more than a "nominal party to the lawsuit," and that the Court should disregard MTI's citizenship in determining whether the Court has jurisdiction over this lawsuit based on diversity.  Doc. 1 ¶ 13.  Thus, Mr. Elling, Ms. Cai, Mr. Cary, and Mesa Biotech are the only real parties in interest in this lawsuit.  *Id.*

The three remaining defendants further assert that there was complete diversity between Mr. Elling and the three "properly joined, real party in interest Defendants" when Mr. Elling filed his complaint and at the time is was removed.  Doc. 1 ¶¶ 14, 15 (citing 28 U.S.C. § 1441(b)(2)[2]).  As alleged in Mr. Elling's complaint, Mesa Biotech is a Delaware corporation with its principal place of business in California.  Doc. 1-1 ¶ 11; *see also* Doc. 1-2; Doc. 1-4 at 4.  Ms. Cai and Mr. Cary assert that contrary to the allegations in Mr. Elling's complaint, they both are domiciled in California and therefore are citizens of California.  Doc. 1 ¶¶ 9, 10.  They each attached affidavits to the notice of removal in which they stated that they considered California to be their domicile, and that they planned to remain there indefinitely.  Doc. 1-3 ¶ 4; Doc 1-4 ¶

---

[1] The notice of removal states that the defendants were served on May 24, 2019, but the affidavits of service indicate that service was accomplished on May 14, 2019.  *Compare* Doc. 1 ¶ 2 *with* Doc. 1-1 at 13−15.

[2] Defendants mistakenly cite to "*29* U.S.C. § 1441(b)(2)," *see* Doc. 1 ¶ 15 (emphasis added), but the correct citation is *28* U.S.C. § 1441(b)(2).

4.  These three defendants also assert that the amount in controversy exceeds $75,000.  Doc. 1 at 5−7.

## II.    Mr. Ellington's Motion to Remand

Mr. Elling argues that this case should be remanded to the First Judicial District Court in Santa Fe because there is not complete diversity among the parties.[3]  Doc. 8 at 1.  He argues that neither Ms. Cai nor Mr. Cary can meet their burden of proving that they are domiciled in California.  *See id.*; *see also* Docs. 8-1, 8-2, 8-3, 10, 10-1, 10-2, 10-3, 10-4, 10-5, 20.  In response, Ms. Cai and Mr. Cary rely not only on their original affidavits in which they each asserted that they resided in and intended to remain in California, but they also submit additional affidavits with additional evidence relating to their residency and intent to remain in California.  *See* Docs. 15, 15-1, 15-2.  Based on the evidence presented, I find that Ms. Cai and Mr. Cary have shown by a preponderance of the evidence that they are domiciled in California.

### A.  Legal Standard for Diversity Jurisdiction

Diversity jurisdiction requires complete diversity:  "the citizenship of each plaintiff [must be] diverse from the citizenship of each defendant."  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  Jurisdictional facts such as citizenship must be proven by a preponderance of the evidence.  *McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008).  "[T]he party invoking federal jurisdiction bears the burden of proof."  *Penteco Corp. Ltd. P'ship–1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991).  "The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of

---

[3] Mr. Elling does not dispute that MTI no longer exists, was subsumed by Mesa Biotech, and is not a real party in interest.  *See generally* Doc. 8.  He also does not dispute that Mesa Biotech is a Delaware Corporation with its principal place of business in California, or that the amount in controversy exceeds. $75,000.  *See generally id.*

a fact is more probable than its nonexistence . . . ." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993) (quoting *In re Winship*, 397 U.S. 358, 371−72 (1970) (Harlan, J., concurring) (quotations omitted)).

Because defendants are the removing party, they must establish by a preponderance of the evidence that defendants Hong Cai and Robert Bruce Cary were citizens of California at the time this case was filed and removed.[4]  "For diversity purposes, citizenship is determined by a person's domicile." *Macias v. N.M. Dep't of Labor*, 300 F.R.D. 529, 548 (D.N.M. 2014).  One's domicile, in turn, is defined as the state where the individual physically resides and intends to remain indefinitely.  *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).  When ascertaining a person's domicile, a court "should consider the totality of the circumstances." *Id.* at 1201.  "[A]ny number of factors might shed light on the subject in any given case." *Id.* Relevant evidence includes, *inter alia*, "the party's current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of

---

[4] Although it is well established that "the jurisdiction of the court depends upon the state of things at the time of the action brought," *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004), there is a lingering question with respect to removed cases as to whether diversity must exist at the time the case is filed in state court, or only when the case is removed to federal court.  "In the removal context, federal courts are split as to what is the critical point for determining the existence of diversity jurisdiction.  The majority of decisions typically require complete diversity to exist at the time the removal petition is filed . . . .  A large minority of courts require complete diversity not only when removal is sought, but also when the original action is filed in the state court."  13E CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3608 (3d ed. 2014) (West).  The Tenth Circuit does not seem to have squarely addressed this particular issue.  *Cf. Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1239 (10th Cir. 2015) (stating without discussion in a removed case that "it is clear the relevant time period for determining the existence of complete diversity is the time of the filing of the complaint" in Oklahoma state court).  This distinction is immaterial here because almost all the facts relied upon apply to both when the case was filed in state court and also when the case was removed.

employment or business; driver's license and automobile registration; payment of taxes . . . ."

13E CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3612 (3d ed. 2014) (West).

**B. Defendants Hong Cai and Robert Bruce Cary Have Shown by a Preponderance of the Evidence That They Were Domiciled in California When This Case was Filed and Removed.**

Mr. Elling contends in his motion to remand that both Ms. Cai and Mr. Cary are domiciled in New Mexico. He argues that the evidence attached to the affidavits submitted with the notice of removal are insufficient to show that they have changed their domiciles from New Mexico to California. Specifically, Mr. Elling says that neither Ms. Cai nor Mr. Cary have shown that they own property in California, and only Ms. Cai submitted a California driver's license. *See* Doc. 8 at 3−4; *see also* Doc. 1-3; Doc. 1-4 at 1−3. And although they both submitted evidence that they are registered to vote in California, voter registrations "are available online and are easily modified." Doc. 8 at 3−4. Mr. Elling also submitted evidence that both Ms. Cai and Mr. Cary own homes in New Mexico, and that Mr. Cary has minor children who live in New Mexico and of whom he has shared custody. *See* Docs. 8-1, 8-2, 8-3, 10, 10-1, 10-2, 10-3, 10-4, 10-5.[5]

In response, Ms. Cai and Mr. Cary submitted additional affidavits and evidence. Docs. 15, 15-1, 15-2. Ms. Cai states in her affidavit that she moved to California in 2015 and has lived there ever since. Doc. 15-1 ¶ 4. She also says that she intends to remain in California indefinitely. *Id.* She says that she spends no more than ten days per year in New Mexico. *Id.* In support of her assertions, she attached a deed of trust showing that she and Mr. Cary purchased a

---

[5] Documents 10-4 and 10-5 appear to be identical to each other and are a document that was filed in Mr. Cary's divorce proceedings.

condominium together in Solana Beach, California in December 2015.  Doc. 15-1 at 4−23.  She

also attached two property tax bills addressed to Mr. Cary at their Solana Beach address that

show that she and Mr. Cary were the owners of record on January 1, 2018, and January 1, 2017.

Doc. 15-1 at 24−27.  Ms. Cai also attached a voided check in her and her husband's name that

has her Solana Beach address printed on it.  Doc. 15-1 at 28.  In addition, Ms. Cai attached a

credit card statement for the period April 20, 2019 to May 19, 2019, which is addressed to her at

her Solana Beach address.  Doc. 15-1 at 29.  Ms. Cai also submitted a copy of her health

insurance card indicating that she has been insured by BlueCross/BlueShield of California since

at least April 1, 2019.  Doc. 15-1 at 30.  She also submitted documentation showing that her car

is registered in California, and that the renewal for her registration was mailed to her at her

Solana Beach address and was due on May 20, 2019.  Doc. 15-1 at 31.  Ms. Cai's LinkedIn

profile shows that she is employed by Mesa Biotech in San Diego, California.  Doc. 15-1 at 32.

Her original affidavit included a copy of her California driver's license, which was issued on

December 28, 2016 and expires in May of 2021.  Doc. 1-3 at 4.  Ms. Cai's original affidavit also

showed that Ms. Cai registered to vote in California on December 28, 2016.  Doc. 1-3 at 3.  With

respect to the property Ms. Cai owns in New Mexico, she acknowledged that she and her

husband still own a home in Los Alamos, but that only her husband lives there as he still works

at Los Alamos National Laboratory.  Doc. 15-1 ¶ 11.  She also acknowledged that she owns two

additional investment properties in New Mexico, but states that she has never lived in either one

of them and that they are investment properties.  *Id.* ¶¶ 12, 13.

Mr. Cary stated in his affidavit that he owns a home in California and lives there "no less

than 50% of [his] time."  Doc. 15-2 ¶ 4.  He attached to his affidavit a copy of the deed of trust

for the condominium in Solana Beach that he and Ms. Cai own together as well as the property

tax bills addressed to him at that property. Doc. 15-2 at 4−27. He also attached a utility bill for the period June 7, 2019 through July 9, 2019, which is addressed to him at his Solana Beach address. Doc. 15-2 at 28−32. Because this bill post-dates the date this case was filed in state court (but not the date of removal), it is of somewhat lesser significance. Nonetheless, it shows electric usage for the past year, and gas usage since January 2019, which presumably would not be shown if the account had not been in Mr. Cary's name for at least those periods of time. *See* Doc. 15-2 at 28. Mr. Cary also attached a copy of his California identification card, which was issued on October 12, 2016 and expires on May 2, 2022. Doc. 15-2 at 33. Mr. Cary's health insurance card shows that he has been insured by BlueCross/BlueShield of California since at least April 1, 2019. Doc. 15-2 at 34. He also attached a bank statement for the period April 11, 2019 to May 10, 2019, which was addressed to him at his Solana Beach address. Doc. 15-2 at 35−36. With respect to whether he owns real property in New Mexico, Mr. Cary explained that he transferred his interest in his family home to his ex-wife in April 2013 in conjunction with their divorce, and he attached a document showing that conveyance. Doc. 15-2 ¶ 8; *see also id.* at 37. He further explained that although he still spends considerable time in New Mexico, it is for the purpose of seeing his children and providing a stable environment for them. *See id.* ¶¶ 10−13. The two children who were still in high school in May 2019 (one child is in college) spent approximately 38% of the time with him, and he rents a home in Santa Fe for this purpose. *Id.* ¶¶ 11−12. Every other week, his children stay with him from Monday evening to Sunday morning in Santa Fe. *Id.* ¶ 11. But he no longer owns any real property in New Mexico. *Id.* ¶ 9. He reiterated that since May 7, 2019, "California has been [his] domicile," that he considered himself a citizen of California, and that he planned to remain there indefinitely. *Id.* ¶ 14.

Based on the evidence presented, I find that both Ms. Cai and Mr. Cary have shown by a preponderance of the evidence that they currently live in California and intend to remain there indefinitely. Although it is clear that both Ms. Cai and Mr. Cary once were domiciled in New Mexico, there is no dispute that they both now work for Mesa Biotech, a company that is located in San Diego, California. "To effect a change in domicile, two things are indispensable: First, residence in a new domicile, and second, the intention to remain there indefinitely. A 'floating intention' to return to a former domicile does not prevent the acquisition of a new domicile." *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983). The evidence establishes here that Ms. Cai and Mr. Cary both work in California and have shared a condominium there since 2015. Ms. Cai lives in the condominium almost all the time. Mr. Cary stays in New Mexico six nights every two weeks to be with his children, but he presumably spends the other eight nights every two weeks in California. Ms. Cai and Mr. Cary own real property together in California, pay property taxes in California, vote in California, receive their healthcare in California, receive important mail at their condominium in California, and Ms. Cai's car is registered in California. Ms. Cai has had a California driver's license since December 2016, and Mr. Cary has had a California identification card since October 2016. Ms. Cai and Mr. Cary both were served with this lawsuit in California at their place of business, Mesa Biotech. Ms. Cai was served personally, and Mr. Cary was served by leaving the documents with Ms. Cai at Mesa Biotech. Doc. 1-1 at 13−15. All of this evidence is consistent with Ms. Cai and Mr. Cary's assertions that they live in California and intend to stay there.

Although Ms. Cai and Mr. Cary's statements regarding their residency and their intent to stay in California "are of course self-serving," that "does not mean that they must be discarded by the trier of the facts, who, on the contrary, may choose to give credence to them." *Crowley v.*

*Glaze*, 710 F.2d 676, 678 (10th Cir. 1983); *see also Washington v. Hovensa LLC*, 652 F.3d 340, 346−47 (3d Cir. 2011) (party's own declarations as to residency and intent to remain may be considered when not clearly contradicted by facts and circumstances).  Here, there is no question that Ms. Cai and Mr. Cary still have significant ties to New Mexico.  Ms. Cai's husband lives in New Mexico, and Mr. Cary's children live here.  There is no reason to assume, however, that Ms. Cai intends to return to the place where her husband lives; he just as easily could be planning to join her in California someday, or they could have other plans that are not apparent from the record.  Similarly, there is no reason to assume that Mr. Cary will return to New Mexico after his youngest son graduates from high school.  The implication from Mr. Cary's affidavit is the opposite; once all his children graduate from high school and enter college, he likely will visit them wherever they happen to be.  The facts and circumstances presented by Mr. Elling do not clearly contradict Ms. Cai and Mr. Cary's statements in their affidavits.  The Court therefore finds by a preponderance of the evidence that Ms. Cai and Mr. Cary were domiciled in California when this case was originally filed in New Mexico state court on May 7, 2019, and when it was removed to this Court on June 13, 2019.

**IV.**     **Conclusion**

For the foregoing reasons, the Court DENIES plaintiff John Elling's Motion to Remand (Doc. 8).

**IT IS SO ORDERED.**

Laura Fashing
United States Magistrate Judge
Presiding by Consent