IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN ELLING,

    Plaintiff,

v.                                                                         1:19-cv-00547-LF-SCY

MESA BIOTECH, INC.,
MESA TECH INTERNATIONAL, INC.,
HONG CAI, and ROBERT BRUCE CARY,
a/k/a R. BRUCE CARY, a/k/a ROBERT CARY,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court on Defendants Mesa Biotech, Inc. ("Mesa Biotech"), Mesa Tech International, Inc. ("MTI"), Hong Cai, and Robert Bruce Cary's (collectively "Defendants") Motion for Summary Judgment, filed March 9, 2020. Doc. 43. Plaintiff John Elling filed his response on March 25, 2020, and Defendants filed their reply on April 8, 2020. *See* Docs. 49, 50. The parties consented to my conducting dispositive proceedings in this matter. *See* Docs. 6, 7, 9. For the following reasons, the Court GRANTS Defendants' motion.

I.      **Statement of Facts**[1]

This case arises out of a dispute between Plaintiff John Elling, formerly Director, President, and Chief Executive Officer of MTI, and his former colleagues, Defendants Hong Cai and Robert Bruce Cary, who now are employed at Defendant Mesa Biotech. *See* Doc. 1-1 (complaint) ¶¶ 6−10, 20−34; Doc. 3 (answer) ¶¶ 6–10, 20–34. Mr. Elling founded MTI with Ms. Cai and Mr. Cary, and all three were initial shareholders. Doc. 1-1 ¶¶ 2−4; Doc. 3 ¶¶ 2–4. MTI was a New Mexico Corporation with its principal place of business in Los Alamos County, New Mexico. *See* Doc. 1-1 ¶ 5; Doc. 3 ¶ 5. In October 2010, Mr. Elling agreed to resign from his positions at MTI, but he retained a portion of MTI's stock pursuant to a written agreement. Doc. 1-1 ¶ 20; Doc. 3 ¶ 20; *see also* Doc. 1-1 at 10−12 (agreement between MTI and Mr. Elling).

On June 1, 2015, MTI prepared a proper and timely notice of a shareholder meeting to be held on June 25, 2015, at which the shareholders would vote on a proposed amendment to the articles of incorporation and a merger with Mesa Biotech, Inc., a Delaware Corporation. UMF 3; Doc. 43-1 at 1. Defendants have submitted some evidence that on June 4, 2015, MTI mailed the notice of the shareholder meeting to Mr. Elling at his address as it appeared on MTI's stock transfer books, postage prepaid.[2] *See* Doc. 43-1 at 1–4, 6–7. Mr. Elling states in his affidavit that he never received this notice. Doc. 49-1 at 1. At the June 25, 2015 meeting, Ms. Cai and

---

[1] For facts alleged in the complaint that defendants do not dispute, the Court cites to the complaint and answer. For facts alleged in defendants' motion that Mr. Elling concedes or does not contest for the purposes of this motion, the Court cites to the Undisputed Material Facts ("UMF") in the Defendants' Motion for Summary Judgment. Doc. 43 at 3−6. For facts that Mr. Elling disputes or partially disputes, or which are not cited in the materials, the Court cites to the underlying exhibits and other materials in the record of which the Court may take judicial notice. *See* FED. R. CIV. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

[2] Mr. Elling acknowledged in his complaint that he received annual meeting notices to elect directors from MTI, *see* Doc. 1-1, ¶ 22, although now he claims that he received those notices by email, not by mail, *see* Doc. 49-1 at 1 ¶ 8, 14–19.

Mr. Cary both voted in favor of the proposed amendment to the articles of incorporation and the merger. Doc. 43-1 at 7–10. Neither Mr. Elling nor any other minority shareholder attended this meeting, nor did any other shareholder vote his or her shares. *See* Doc. 43-1 at 7–8. At the time of the June 25, 2015 shareholder meeting, Ms. Cai and Mr. Cary together owned more than 75% of all the outstanding shares of MTI's common stock. *See* Doc. 43-1 at 11; Doc. 49 at 3, ¶ 8. Mr. Elling owned less than 9% of the shares. Doc. 1-1 ¶ 21; *see also* Doc. 43-1 at 11; Doc. 49 at 3 ¶ 7.

In July 2015, MTI merged with Mesa Biotech. Doc. 1-4 at 5. By virtue of the merger, MTI was subsumed by Mesa Biotech, and MTI ceased to exist on July 14, 2015. *See* Doc. 1-2 at 1–2; Doc. 1-4 at 5. As a result of the merger, Mr. Elling became a minority shareholder in Mesa Biotech, and he still owns 395,200 shares of Mesa Biotech common stock. UMF 20, 21; Doc. 43-1 at 11, 14; Doc. 1-4 at 6. Mr. Elling's shares are worth the same as every other share of Mesa Biotech common stock, including those held by Ms. Cai and Mr. Cary. UMF 22.

Mr. Elling claims that he first learned of MTI's merger with Mesa Biotech in August 2018. Doc. 1-1 ¶¶ 23–25. In October 2018 and January 2019, Mr. Elling sought to inspect "MTI/Mesa Biotech['s]" books and records. Doc. 1-1 ¶ 31; Doc. 49 at 4 ¶ 11, Doc. 49-1 at 20–24. MTI, however, was not in existence in 2018 and 2019. *See* Doc. 1-2 at 1–2; Doc. 1-4 at 5. Mr. Elling sought to review Mesa Biotech's books and records pursuant to DEL. CODE ANN. tit. 8, § 220. Doc. 49-1 at 20. Mr. Elling received access to Mesa Biotech's books and records on December 4 and 10, 2019, as part of the discovery in this case. Doc. 49 at 7, ¶ 18.

## II.   Mr. Elling's Complaint

Mr. Elling alleges in his complaint that over the years, he received scant information regarding MTI's operations. Doc. 1-1 ¶ 22. He claims that he first learned that MTI had merged

3

with Mesa Biotech, Inc. in August 2018.  *Id*. ¶¶ 23, 24.  According to the complaint, Mr. Elling received no notice of any proposed merger or proposed amendment to MTI's articles of incorporation, nor did he receive the opportunity to vote on the proposed merger, nor was a merger plan submitted to MTI's shareholders.  *Id*. ¶¶ 25−27.  Mr. Elling also alleges that MTI/Mesa Biotech refused to allow him to inspect their books and records and refused to address his concerns regarding the merger, amendments to the company's articles of incorporation and bylaws, the company's relocation to California, and changes to its stock plan.  *Id*. ¶ 29−34.  In count I of his complaint, Mr. Elling claims that Ms. Cai and Mr. Cary breached their fiduciary duties to him.  *Id*. ¶¶ 35−38.  Count II alleges that Defendants collectively engaged in "shareholder oppression."  *Id*. ¶¶ 39−41.  Count III alleges that MTI breached its contract with Mr. Elling, including breaching the covenant of good faith and fair dealing.  *Id*. ¶¶ 42−46.  Mr. Elling seeks compensatory, punitive, and statutory damages, as well as his attorneys' fees and costs.  *Id*. at 8.

### III.     Defendants' Motion for Summary Judgment and Mr. Elling's Response

Defendants argue that Mr. Elling cannot prove his claim for breach of fiduciary duty because it rests entirely on his claim that defendants failed to disclose to him MTI's intent to merge with Mesa Biotech and did not allow him to vote on the merger.  Doc. 43 at 7. Defendants contend that Mr. Elling's claim is unsustainable because he cannot prove that the MTI did not mail him the notification of the shareholder meeting at which the shareholders voted on the merger.  *Id.* at 7–8.  Defendants further contend that the alleged lack of notice and inability to vote his shares made no difference as Mr. Elling was a minority shareholder, and the two shareholders who did vote in favor of the merger owned over 75% of the shares.  *Id.* at 8. And finally, defendants contend that Mr. Elling's claim for breach of fiduciary duty has no legal

merit because he cannot show that Ms. Cai and Mr. Cary acted with any improper motive, or that they realized a benefit that Mr. Elling did not receive, or that the merger caused any loss to Mr. Elling.  *Id.* at 8–9.

Defendants argue that Mr. Elling cannot sustain his claim for shareholder oppression because Mr. Elling cannot prove that the merger or any other acts by defendants diminished the value of Mr. Elling's shares in Mesa Biotech or otherwise harmed his minority interests.  Doc. 43 at 9–10.  In addition, Mr. Elling failed to exercise his rights under New Mexico's Business Corporation Act if he objected to the merger, and Mr. Elling does not claim that the merger or any other challenged corporate actions were unlawful or fraudulent.  *Id.* at 10–11.

With respect to Mr. Elling's breach of contract claim, Defendants argue that Mr. Elling has not pointed to any provision in the contract between him and MTI that MTI breached.  Doc. 43 at 11–12.  With regard to all Mr. Elling's claims, defendants argue that Mr. Elling has no evidence that he was damaged in any way from the merger, and that he cannot sustain a claim for statutory damages under New Mexico law because MTI no longer exists, and Mesa Biotech is a Delaware corporation, not a New Mexico corporation, and therefore is not subject to New Mexico's examination-of-records statute.  *See id.* at 12–13.

In response, Mr. Elling does not specifically address the three claims he brings in his complaint:  breach of fiduciary duty, shareholder oppression, and breach of contract.  *See generally* Doc. 49 at 7–10.  Instead, he argues that he has brought "a claim for failure to hold a vote on the merger that saw MTI merge into Mesa Biotech," *id.* at 7, and that "[t]here is a genuine factual issue as to whether Defendants provided notice and an opportunity to vote on the merger," *id.* at 9.  Mr. Elling also argues that he has brought "a claim against Defendants to provide books and records that he is entitled to as a shareholder," *id.*, and that both New Mexico

5

and Delaware have statutory provisions that permit the inspection of corporate books and records, *id.* at 9–10.

Even if the Court were to find that there is a genuine issue as to whether MTI mailed the merger notice to Mr. Elling and that Ms. Cai and Mr. Cary therefore breached their fiduciary duties to Mr. Elling, Mr. Elling has not shown that he has suffered any damages as a result of the alleged breach. Further, Mr. Elling has submitted no evidence that defendants have engaged in shareholder oppression or that MTI has breached its contract with him. Mr. Elling also has failed to submit any evidence that he is entitled to statutory damages under N.M. STAT. ANN. § 53-11-50(B) for being denied access to MTI's or Mesa Biotech's corporate books and records, and he did not allege a claim for statutory damages under Delaware law. The Court therefore will grant Defendants' motion.

### A. Legal Standard for Summary Judgment

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant bears the initial burden of establishing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "[T]he movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Sigmon v. CommunityCare HMO,*

*Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).  If this burden is met, the non-movant must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial.  *Celotex*, 477 U.S. at 324.  The non-moving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment.  *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988).  Rather, the non-movant has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment."  *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

At the summary judgment stage, the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-movant.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  The Court's function "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.  There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.*  Summary judgment may be granted where "the evidence is merely colorable, or is not significantly probative."  *Id.* at 249–50 (internal citations omitted).

### B. Applicable Law

In this diversity case, the parties agree that New Mexico law applies.  *See generally* Docs. 43, 49, 50 (all applying New Mexico law).  Absent a statute or decision by the New Mexico Supreme Court, this Court must attempt to predict how that court would rule.  *See Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994).  The Court may consider all sources available, including decisions of the New Mexico Court of Appeals, decisions from other states, federal

decisions, and the general weight and trend of authority. *See Farmers Alliance Mut. Ins. Co. v. Bakke*, 619 F.2d 885, 888 (10th Cir. 1980).

### C. Breach of Fiduciary Duty

Under New Mexico law, to prove a claim for breach of fiduciary duty, a plaintiff must prove that the defendant owed a fiduciary duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused the plaintiff damages. *See GCM, Inc. v. Kentucky Cent. Life Ins. Co.*, 1997-NMSC-052, ¶ 17, 124 N.M. 186, 191, 947 P.2d 143, 148 (stating the elements of the tort of aiding and abetting a breach of fiduciary duty); *Richter v. Van Amberg*, 97 F. Supp. 2d 1255, 1261 (D.N.M. 2000) (stating the elements of an attorney's breach of fiduciary duty to his or her client under New Mexico law). Damages are an essential element of the claim. *Moody v. Stribling*, 1999-NMCA-094, ¶ 27, 127 N.M. 630, 638, 985 P.2d 1210, 1218 ("To be actionable for damages, harm must also result from the breach [of fiduciary duty]."). To escape summary judgment, Mr. Elling must put forth evidence of each element of his claim. *Combs v. PriceWaterhouse Coopers LLP*, 382 F.3d 1196, 1199–1200 (10th Cir. 2004).

Defendants do not dispute that Ms. Cai and Mr. Cary owed Mr. Elling a fiduciary duty as they were all shareholders of a close corporation. *See Walta v. Gallegos Law Firm, P.C.*, 2002-NMCA-015, ¶ 41, 131 N.M. 544, 553, 40 P.3d 449, 458 ("The duty between shareholders of a close corporation is similar to that owed by directors, officers, and shareholders to the corporation itself; that is, loyalty, good faith, inherent fairness, and the obligation not to profit at the expense of the corporation."). The New Mexico Court of Appeals has indicated that these fiduciary duties include

1. the duty of loyalty to each other;
2. the duty to fully disclose material facts regarding transactions and dealings with each other;
3. the duty to deal openly, honestly and fairly with other shareholders; [and]

8

>    4. the duty to avoid self-seeking conduct and self-dealing . . . .

*Id.* ¶¶ 49, 50, 131 N.M. at 555, 40 P.3d at 460. Defendants argue that Mr. Elling's only allegations regarding a breach of fiduciary duty are that Ms. Cai and Mr. Cary "fail[ed] to disclose to [Plaintiff] their intent to merge or allow him to vote on the merger," and that they "fail[ed] to inform him or hold a vote on the changes to the company's certificate of incorporation, bylaws, stock plan, and its move to California." Doc. 43 at 7 (citing Doc. 1-1 ¶ 37). Defendants argue that these "meager assertions" do not constitute a breach of fiduciary duty and "are not factually sustainable." Doc. 43 at 7. Mr. Elling asserts that the Defendants' "liability for failure to provide notice of the merger hangs on the factual question of whether Defendants mailed the notice," and that "[t]here is a genuine factual issue as to whether Defendants provided notice and an opportunity to vote on the merger . . . ." Doc. 49 at 9.

If Ms. Cai and Mr. Cary failed to mail the notification to Mr. Elling regarding the proposed merger and the upcoming vote on the merger, this failure arguably could constitute a breach in "the duty to fully disclose material facts regarding transactions and dealings with each other." *See Walta*, 2002-NMCA-015, ¶ 49, 131 N.M. at 555, 40 P.3d at 460. Although Ms. Cai and Mr. Cary have provided some evidence that they mailed the notification, Doc. 43-1 at 1–7, Mr. Elling states under penalty of perjury that he never received the notice, Doc. 49-1 at 1 ¶ 7. Thus, whether Mr. Elling has put forth sufficient facts to satisfy the second element of a breach of fiduciary duty claim—whether the defendants breached the fiduciary duty owed—turns on whether Mr. Elling's statement raises a genuine issue of material fact. The Court, however, need not decide this issue because Mr. Elling cannot satisfy the last element of his breach-of-fiduciary-duty claim. Mr. Elling has provided no evidence that he sustained any damages from the purported breach of fiduciary duty.

9

Defendants argue in their motion that Mr. Elling cannot prove that his lack of notice of the merger damaged him in any way. Doc. 43 at 8. Had Mr. Elling attended the meeting and voted against the merger, he did not have enough shares to block the merger. *Id.* Further, there is no evidence that Ms. Cai and Mr. Cary received a benefit that Mr. Elling did not receive. *See id.* at 8–9. Mr. Elling remains a minority shareholder in Mesa Biotech, and his shares are worth the same as every other share of common stock, including those held by Ms. Cai and Mr. Cary. Doc. 43 at 10 (citing to UMF 22). The only potential remedy Mr. Elling would have had at the time of the merger was to pursue a right of appraisal under N.M. STAT. ANN. 53-15-4(A), which permits dissenting minority shareholders to seek payment of the fair value of their shares if a merger is approved. Mr. Elling never sought this remedy, even in this lawsuit. *See* Doc. 43 at 10–11, *see also* Doc. 1-1.

Mr. Elling submits no evidence to rebut defendants' evidence that he has suffered no damage from the alleged breach of fiduciary duty. *See generally* Doc. 49. He acknowledges that he remains a minority shareholder in Mesa Biotech, and that he received the same proportion of shares that he held in MTI. *See* Doc. 1-1 ¶ 20 (Mr. Elling retained 3952 shares of MTI's common stock); Doc. 49 at 5 ¶¶ 3, 20 (Mr. Elling "acknowledges that he has 395,200 shares of [Mesa Biotech's] common stock" and noting there was a 100:1 stock split in 2012); *see also* Doc. 1-4 at 6 (Articles of Amendment showing 100:1 stock split). Mr. Elling acknowledged that the valuation of his shares in July 2018 was $1.8 per share, and he submitted evidence that the value of his stock may have increased substantially since that date. *See* Doc. 1-4 at 9 (Summary of Valuation as of 7/27/2018); Doc. 49 at 5 ¶ 22 (alleging value of $8.16 per share in September 2019) (citing Doc. 49-1 at 25). In short, there is no evidence to support the third element of Mr. Elling's claim of a breach of fiduciary duty. Defendants are entitled to summary judgment on

this claim.

### D. Shareholder Oppression

The elements of a shareholder oppression claim under New Mexico law are somewhat murky. Section 53-16-16(A)(1) of New Mexico Statutes provides that "district courts may liquidate the assets and business of a corporation[ ][3] (1) in an action by a shareholder when it is established that: . . . (b) the acts of the directors or those in control of the corporation are illegal, oppressive or fraudulent . . . ." The statute does not define oppressive conduct.[4] *McCauley v. Tom McCauley & Son, Inc.*, 1986-NMCA-065, ¶ 20, 105 N.M. 523, 527, 724 P.2d 232, 236. "Rather, it is an expansive term that is used to cover a multitude of situations dealing with improper conduct." *Id.* The New Mexico Court of Appeals has indicated that oppressive conduct includes "harsh, dishonest or wrongful conduct and a visible departure from the standards of fairdealing which inure[s] to the benefit of [the] majority and to the detriment of the minority." *Id.* ¶ 21, 105 N.M. at 528, 724 P.2d at 237 (quoting *Jackson v. St. Regis Apartments, Inc.*, 565 S.W.2d 178, 183 (Mo. App. 1978)). It also includes acts "which effectively prevent[ ] the non-controlling shareholder from participating in the operation and management of the corporation." *Id.* ¶ 24, 105 N.M. at 528, 724 P.2d at 237. The plaintiff does not have to prove that the oppressive acts are illegal or fraudulent. *Id.* On the other hand, "[m]ere dissatisfaction on the part of a minority stockholder" is not enough to prove oppressive conduct. *Id.* ¶ 26, 105 N.M. at 528, 724 P.2d at 237. Importantly, "conduct that does not produce an injury, even

---

[3] Courts are authorized to consider alternative remedies, short of liquidation and dissolution. *McCauley v. Tom McCauley & Son, Inc.*, 1986-NMCA-065, ¶ 15, 105 N.M. 523, 527, 724 P.2d 232, 236.

[4] Mr. Elling has submitted no evidence that anything defendants did was illegal or fraudulent. *See generally* Doc. 49. Thus, his only avenue for relief under N.M. STAT. ANN. § 53-16-16(A)(1)(b) is to show that defendants engaged in oppressive conduct.

though objectionable to the protestants, does not call for judicial interference." *Id.* ¶ 31, 105 N.M. at 529, 724 P.2d at 238 (quoting *DiIaconi v. New Cal Corp.*, 1982-NMCA-064, ¶ 31, 97 N.M. 782, 788, 643 P.2d 1234, 1240).

Mr. Elling does not specifically state in his complaint or his response to defendants' motion what conduct he alleges was oppressive. The only conduct that he addresses at all in his response is the Defendants' alleged failure to provide him notice of the merger and permit him to vote on it, and their alleged refusal to provide access to MTI's and Mesa Biotech's books and records. *See* Doc. 49 at 7–10. Mr. Elling has cited no case—and the Court has found none—that would suggest that this conduct alone would rise to the level of oppressive conduct under New Mexico's shareholder oppression statute. Although the New Mexico Court of Appeals indicated that lack of access to corporate books and records could play a role in a shareholder oppression claim, it would need to be accompanied by other actions, including mismanagement of corporate affairs, misapplication or waste of corporate assets, inaccurate or inequitable keeping of the corporate books and records, or the use of corporate assets for personal purposes. *See McCauley*, 1986-NMCA-065, ¶ 30, 105 N.M. at 529, 724 P.2d at 238. Mr. Elling has submitted no evidence of such conduct. More importantly, as was true with respect to Mr. Elling's complaint that he did not receive notice of the proposed merger and was not permitted to vote on it, Mr. Elling has failed to produce any evidence that his lack of access to MTI's or Mesa Biotech's corporate books injured him in any way. *See* Doc. 49 at 9–10. Conduct that did not produce an injury, even though objectionable to Mr. Elling, does not call for judicial interference. *See McCauley*, 1986-NMCA-065, ¶ 31, 105 N.M. at 529, 724 P.2d at 238. Defendants are entitled to summary judgment on Mr. Elling's shareholder oppression claim.

### E. Breach of Contract

Under New Mexico law, the elements of a breach-of-contract action are the existence of the contract, breach of the contract, causation, and damages. *See Camino Real Mobile Home Park P'ship v. Wolfe*, 1995-NMSC-013, ¶ 18, 119 N.M. 436, 442, 891 P.2d 1190, 1196, *overruled on other grounds by Sunnyland Farms, Inc. v. Central New Mexico Elec. Co-op, Inc.*, 2013-NMSC-017, ¶ 16, 301 P.3d 387, 393. In this case, although Mr. Elling has identified a contract between him and MTI, *see* Doc. 1-1 at 10–12, he makes no effort to explain how any defendants breached that contract, or how that purported breach caused him any damages. *See generally* Doc. 49. Defendants are entitled to summary judgment on this claim.

### F. Claim for Statutory Damages

Although not delineated in his complaint as a separate claim, Mr. Elling states that he has brought "a claim against Defendants for failure to provide books and records that he is entitled to as a shareholder." Doc. 49 at 9. It is true that Mr. Elling alleges in his complaint that on "October 8, 2018 and January 10, 2019, Plaintiff requested to inspect MTI/Mesa Biotech's books and records," and that "MTI/Mesa Biotech refused to allow inspection of its books and records, contrary to common law and Section 53-11-50(B)." Doc. 1-1 ¶¶ 31, 32. Mr. Elling also requested "the ten percent statutory penalty pursuant to Section 53-11-50(B)" in his prayer for relief. *Id*. at 8. In their motion for summary judgment, Defendants point out that MTI ceased to exist on July 14, 2015, Doc. 43 at 5, ¶ 12; *see also* Doc. 1-2, Doc. 1-4 at 5, and that Mesa Biotech, as a Delaware corporation, is not subject to New Mexico's examination-of-records statute, Doc. 43 at 12–13. In response, Mr. Elling argues only that both Delaware and New Mexico have statutes that permit shareholders to inspect a corporation's books and records. *See* Doc. 49 at 9–10. Based on the evidence before the Court, Mr. Elling cannot support his claim

13

for statutory damages under N.M. STAT. ANN. § 53-11-50(B), and his complaint cannot be read to have brought a claim under Delaware law.

Section 53-11-50(B) of New Mexico Statutes provides that shareholders "upon written demand stating the purpose thereof, may examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose, its relevant books and records of account, minutes and record of shareholders and make extracts therefrom." "Any officer or agent who, or a corporation which, shall refuse to allow any shareholder . . . to examine and make extracts from its books and records of account, minutes and record of shareholders, for any proper purpose, shall be liable to the shareholder . . . in a penalty of ten percent of the value of the shares owned by the shareholder . . . ." N.M. STAT. ANN. § 53-11-50(B).

But as Defendants correctly point out, Mesa Biotech is a Delaware corporation and is not subject to New Mexico's Corporation Act, including § 53-11-50(B). *See* N.M. STAT. ANN. § 53-11-2(A) (defining a "corporation" or "domestic corporation" as "a corporation for profit subject to the provisions of the Business Corporation Act, *except a foreign corporation*") (emphasis added); N.M. STAT. ANN. § 53-11-2(B) (defining a "foreign corporation" as "a corporation for profit organized under laws other than the laws of this state for a purpose for which a corporation may be organized under the Business Corporation Act"). Further, because MTI ceased to exist in July 2015, and because Mr. Elling did not make his first written examination request until October 2018, Mr. Elling cannot recover statutory damages based on any request to MTI.

With respect to Mr. Elling's assertion that Delaware also has an inspection-of-records statute, while true, it is beside the point. Mr. Elling did not make a claim for statutory damages under Delaware law anywhere in his complaint. *See generally* Doc. 1-1. In addition, the Delaware statute upon which Mr. Elling relies states that "[t]he Court of Chancery is hereby

14

vested with exclusive jurisdiction to determine whether or not the person seeking inspection is entitled to the inspection sought." DEL. CODE ANN. tit. 8, § 220(c). Furthermore, this section makes no provision for statutory damages. *See generally* DEL. CODE ANN. tit. 8, § 220. Defendants therefore are entitled to summary judgment on Mr. Elling's claim for statutory damages.

### IV. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment (Doc. 43). Summary Judgment is GRANTED in favor of Defendants Mesa Biotech, Inc., Mesa Tech International, Inc., Hong Cai, and Robert Bruce Cary on all Plaintiff John Elling's claims. The complaint is dismissed in its entirety with prejudice.

**IT IS SO ORDERED.**

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent